Argued and submitted August 16, affirmed December 18, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DELONTE ANTONIO BROOKS,
*Defendant-Appellant.*

Lane County Circuit Court
17CR10554; A165569

456 P3d 665

Defendant appeals from a judgment of conviction for three counts of robbery in the first degree with a firearm, one count of theft in the first degree with a firearm, one count of kidnapping in the second degree with a firearm, and one count of burglary in the first degree with a firearm. Defendant raises two assignments of error on appeal. The Court of Appeals addresses only defendant's second assignment of error—that the trial court erred in denying his request for self-representation guaranteed under Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. The state responds that when defendant requested to represent himself, his right to counsel had not yet attached, and, alternatively, on this record, there was not a denial of self-representation, but rather a deferral of a decision on that issue. *Held*: The right to counsel attached, and the preliminary hearing fell within the scope of the right to counsel. However, defendant's request for self-representation was equivocal. At that early stage proceeding, the trial court's deferral of consideration of an equivocal request for a short period, thus affording defendant time to meet with counsel and be informed of the risks and benefits of representation, did not amount to a denial of defendant's rights to self-representation.

Affirmed.

Suzanne B. Chanti, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Hannah K. Hoffman, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

Defendant appeals from a judgment of conviction on three counts of robbery in the first degree with a firearm, ORS 164.415, and one count each of theft in the first degree with a firearm, ORS 164.055, kidnapping in the second degree with a firearm, ORS 163.225, and burglary in the first degree with a firearm, ORS 164.225. Defendant raises two assignment of error on appeal. We reject his second assignment without discussion and write to address only the first, in which he argues that the trial court erred in denying his request for self-representation. We affirm.

The facts underlying defendant's charges are not relevant to the issue on appeal and we do not discuss them. For our purposes, the most relevant facts are derived from the pretrial hearing that occurred on February 17, 2017. At that first court appearance defendant stated that he wanted to be represented by an attorney. However, after his attorney chose not to request a preliminary hearing, defendant asked to represent himself. The following exchange occurred:

"[DEFENDANT]:   I would—I would like to just represent myself for right now, because I want to set a preliminary hearing date. I want to get through this as quick as possible, sir. I would like to set my prelim date as soon as possible.

"[COURT]:   Well here's the thing, he hasn't waived the right to request your preliminary hearing. He just said he's not requesting right now, so—

"[DEFENDANT]:   I just—

"[COURT]:   —hang on—

"[DEFENDANT]:   —I just—that's why I would like the—

"[COURT]:   —[Defendant], let me just finish.

"[DEFENDANT]:   Yes, sir.

"[COURT]:   So there might be a good reason to do what he's suggesting. Perhaps you could take the time, just talk to him. If you don't want to have that happen then on Tuesday you can come in here, say I want a preliminary hearing deadline and we'll set one for you, so he's not giving

up the right forever. You're just not doing—invoking it right now. There might be reasons to do that, and I can't explain them to you because I can't give you advice, alright. You—

"[DEFENDANT]:   I mean I just don't know no information on the case, and the only way—

"[DEFENSE COUNSEL]:   Either do we.

"[DEFENDANT]:   —I can get information is—is to have a prelim.

"[COURT]:   Well here's the thing is you—you're certainly free to represent yourself if you don't want a lawyer but I would urge you to. These charges you're looking at a mandatory minimum prison sentences that could be extremely long. They're Robbery in the First Degree. If I can remember right, each one of those counts carries with it a mandatory minimum sentence of 90 months in prison without the opportunity for any kind of early release, so having a lawyer is probably in your best bet, and you can talk to them on Tuesday and give them direction. They're—your lawyer, not the other way around."

The transcript indicates there were some off-the-record discussions with defendant and counsel, then counsel went back on the record:

"[DEFENSE COUNSEL]:   Okay, is the Court willing to—to let him talk to me or do you—I mean we could just put it back on the docket for Tuesday.

"[COURT]:   I—I'm happier to just put it on the docket for Tuesday and you can talk—have time to talk to him this afternoon and then you can be back on Tuesday and tell us how you want to proceed.

"[DEFENSE COUNSEL]:   Okay.

"[COURT]:   Alright, so we'll set that for 1:30 in the afternoon this coming Tuesday and come back in here. That will give you chance and this gentleman's going to talk to you right now after we get done with court, right?

"[COURT]:   Alright, so it's the 20—it's Tuesday, February 21st at—we'll have him sign for it. Sir, at that time we'll bring you back before the Court if you want to ask for a preliminary if you had time, you'd certainly be free to do that. You should talk with the lawyer briefly the pros and cons of doing that."

At the Tuesday, February 21, 2017, court appearance, defendant appeared through different counsel. The court set a preliminary hearing deadline of February 28, 2017. Ultimately, defendant was indicted on February 27, 2017, and arraigned on that indictment on March 1, 2017, represented by his original counsel. Except for the exchange at the initial appearance, defendant made no other requests to represent himself. Ultimately, defendant proceeded to trial where a jury convicted him of all nondismissed counts, and this appeal followed.

On appeal, defendant argues that the trial court unlawfully impeded his right to self-representation guaranteed under Article I, section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. The state responds, first, that defendant's right to counsel had not yet attached at the February 17, 2017, hearing, and, accordingly, no right to self-representation had attached. Thus, argues the state, at a hearing in which the right to counsel has not attached, the state can compel an individual to accept representation by counsel. Alternatively, the state argues that, on this record, there was not a denial of self-representation, but rather a deferral of a decision on that issue.

Whether a trial court has denied a defendant's right to counsel, or the according right to self-representation, is a question of law that we review for errors of law. *See State v. Miller*, 254 Or App 514, 522-24, 295 P3d 158 (2013) (applying standard); *Faretta v. California*, 422 US 806, 835-36, 95 S Ct 2525, 45 L Ed 2d 562 (1975) (same). We now turn to the merits.

A criminal defendant's right to counsel includes the right to self-representation under both the state and federal constitutions. *Miller*, 254 Or App at 523. A defendant has the constitutional right either to be represented by counsel or, if he so elects, to represent himself. *State v. Hightower*, 361 Or 412, 416-17, 393 P3d 224 (2017); *State v. Verna*, 9 Or App 620, 624, 498 P2d 793 (1972). Absent special circumstances, a court cannot force counsel upon a defendant who seeks to represent him or herself. *Verna*, 9 Or App at 625.

Under both the state and federal constitutions an individual's right to counsel attaches at the time of criminal charging:

"[A]s the nature of law enforcement and criminal prosecution changed, both state and federal courts expanded their views of the 'criminal prosecution' that triggered the right to counsel, so that the constitutional guarantee applied as early as the commencement of criminal proceedings by indictment or other formal charge. *** The rationale for that doctrinal shift was the recognition that a defendant's 'assistance' of counsel would be less than meaningful if it were limited to the trial itself. As the United States Supreme Court explained in *United States v. Ash*, 413 US 300, 310, 93 S Ct 2568, 37 L Ed 2d 619 (1973), '[t]his extension of the right to counsel to events before trial has resulted from changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might appropriately be considered to be parts of the trial itself.'"

*State v. Prieto-Rubio*, 359 Or 16, 24, 376 P3d 255 (2016) (internal citations omitted).

However, case law recognizes a distinction between when the right to counsel *attaches*, versus the *scope* of that right. The scope of the right to counsel is limited to certain "critical stages" of the criminal prosecution. In *Ash*, the Supreme Court held that the Sixth Amendment entitles a defendant to the assistance of counsel in pretrial confrontations "presenting the same dangers that gave birth to the right itself." 413 US at 311 (internal citation omitted). A pretrial event is considered a "critical stage" for Sixth Amendment purposes if counsel's absence from that event "could derogate from the defendant's right to a fair trial." *Id.* (citing *United States v. Wade*, 388 US 218, 226, 87 S Ct 1926, 18 L Ed 2d 1149 (1967)).

Similarly, under the Oregon Constitution, the scope of the right to counsel encompasses stages in criminal proceedings in which counsel's presence could prevent prejudice to a defendant. *Prieto-Rubio*, 359 Or at 24-25. In *State v. Miller*, 254 Or 244, 458 P2d 1017 (1969), the Oregon Supreme Court held that the scope of the right to counsel

encompassed those stages of a criminal proceeding "when [a defendant] must take steps or make a choice which is likely to have a substantial effect on the prosecution against him." *Id.* at 249.

The hearing at issue in this case proceeded much as one would expect any arraignment to proceed. Such a hearing is governed by statute. ORS 135.020 sets forth events that should occur at an arraignment:

> "The arraignment shall be made by the court, or by the clerk or the district attorney under its direction, as provided in ORS 135.030  The arraignment consists of reading the accusatory instrument to the defendant, causing delivery to the defendant of a copy thereof and indorsements thereon, including the list of witnesses indorsed on it or appended thereto if the accusatory instrument is an indictment, asking the defendant how the defendant pleads to the charge."

At the February 17, 2017, hearing, all of those steps occurred except for an entry of plea. The trial court explicitly refused an opportunity for defendant to enter a plea, stating "no plea will be entered at this time." According to the state, that lack of a plea renders the hearing here not a critical stage to which the scope of the right to counsel applies. As the state argues, "Defendant did not enter a plea, did not answer questions, did not give testimony, and did not legally bind himself in any way. He was also not 'heard' by the court in any formal way." We disagree.

First, the state has offered no persuasive authority, and we are aware of none, supporting the proposition that the scope of the right to counsel can be cut off based on what actually happened at a hearing, versus what the law provides should have happened at a hearing. Said another way, the Oregon legislature has required that an arraignment "shall be made by the court" and then defined what constitutes an arraignment. The arraignment contemplated by statute clearly is a critical stage of a criminal proceeding, and no party disputes that on appeal. A trial court's refusal to accept a plea during a proceeding that, by all other appearances has all the hallmarks of an arraignment, does not render it less of a critical stage.

But even if that were not the case, here, defendant was called to answer the court on a critical fact: his name. Upon receiving the charging instrument defense counsel told the court:

"[DEFENSE COUNSEL]:  So we're in receipt of the information, waive further reading, further advice of rights, correctly named.

"(Counsel discusses with defendant)

"[DEFENSE COUNSEL]:  Name and date of birth appear to be correct."

The acknowledgement of whether the charging instrument has "truly named" a defendant carries with it serious consequences in Oregon. ORS 135.060 provides that:

"When the defendant is arraigned, the defendant shall be informed that:

"(a)  If the name by which the defendant is charged in the accusatory instrument is not the true name of the defendant the defendant must then declare the true name; and

"(b)  If the defendant does not declare the true name as required by paragraph (a) of this subsection, the defendant is ineligible for any form of release other than a security release under ORS 135.265."

Thus, acknowledging that one is truly named in a charging instrument is a point in the criminal proceeding where a defendant "must take steps or make a choice which is likely to have a substantial effect on the prosecution against him." *Miller*, 254 Or at 249. It is, therefore, a critical stage of the proceeding to which the scope of the right to counsel applies, regardless if it is accompanied by an opportunity to enter a plea.

Having determined that the right to counsel attached and that the February 17 hearing in this case fell within the scope of the right to counsel, we now turn to the court's response to defendant's request. We have repeatedly held that "[w]hen a defendant asks to represent himself, the court must determine, on the record, whether his decision is an intelligent and understanding one." *Miller*, 254 Or App at

523 (citing *State v. Davis*, 110 Or App 358, 360, 822 P2d 736 (1991)). Further, the court must "determine whether granting the defendant's request would disrupt the judicial process." *Davis*, 110 Or App at 360 (1991).

We have found reversable error when a trial court failed to engage in the inquiry called for in *Miller*. In *State v. Ortega*, we held:

> "Specifically, the record of the operative pretrial hearing discloses that, notwithstanding defendant's initial, unambiguous request ('I don't want the services of the lawyer. I want to represent myself.') and his ultimate, and equally explicit, reiterated request ('I am waiving the services of my lawyer.'), the trial court failed to engage in the inquiry prescribed for the assessment of such requests."

286 Or App 673, 674, 399 P3d 470 (2017).

Here, defendant made an initially unequivocal request for self-representation when he said, "I would like to just represent myself for right now." In response, however, the trial court suggested to defendant that "[p]erhaps you could take the time, just talk to him." The trial court then said "you're certainly free to represent yourself if you don't want a lawyer but I would urge you to. *** [H]aving a lawyer is probably in your best bet, and you can talk to them on Tuesday and give them direction. They're—your lawyer, not the other way around."

If that were the end of the inquiry, this case would be difficult to distinguish from *Ortega*.[1] However, unlike in *Ortega*, after that exchange between defendant and the court, the transcript evidences that defendant and defense counsel talked. Following that off-the-record conversation, defense counsel stated:

> "[DEFENSE COUNSEL]:   Okay, is the Court willing to–to let him talk to me or do you—I mean we could just put it back on the docket for Tuesday.
>
> "[COURT]:   I—I'm happier to just put it on the docket for Tuesday and you can talk—have time to talk to him

---

[1] *See also State v. Glasby*, 301 Or App 479, 456 P3d 305 (2019), decided this day.

this afternoon and then you can be back on Tuesday and tell us how you want to proceed.

"[DEFENSE COUNSEL]:   Okay."

In light of that portion of the record, defendant's initial unequivocal invocation of his right to self-representation became an *equivocal* invocation. Faced with that factual development, defendant analogizes the situation to a suspect's equivocal invocation of counsel during interrogation—governed by Article I, section 12, of the Oregon Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. In that situation we have held,

> "[w]hen the invocation is equivocal, assuming the police do not choose to cease interrogation entirely, again, there is only one permissible response: the police are required to ask follow-up questions to clarify the equivocal nature of the suspect's statement. As we recently reiterated in *Schrepfer*, '[a]ny questioning not reasonably designed to clarify the equivocal nature of the statement is impermissible.'"

*State v. Hickman*, 289 Or App 602, 606, 410 P3d 1102 (2017) (quoting *State v. Schrepfer*, 288 Or App 429, 436, 406 P3d 1098 (2017) (some internal quotation marks and citation omitted). Defendant asks us to impart a similar requirement to trial courts. We decline to do so in this scenario.

This case presents an unusual factual situation. The vast majority of our decisions in this area have occurred when a trial court was presented with (1) an unequivocal invocation of the right to self-representation, that (2) occurred either the morning of trial, or mid-trial. In such a situation a trial court would have no practical option but to attempt to clarify the nature of the equivocal request.

Here, by contrast, defendant made an equivocal invocation at his first appearance. The first appearance on a criminal matter often occurs quickly, and *en masse* with many other cases. Often, a criminal defendant who has been appointed counsel will have met his or her lawyer mere moments before. In many instances the lawyer actually appointed isn't even present. As a practical matter, first appearances are an imperfect forum to thoughtfully

communicate the intricacies of the costs and benefits of representation by counsel.

In this case, there was no trial imminent, nor even any significant preliminary dispositive hearing upcoming. The record shows that the court set a hearing a few days out and explicitly noted "at that time we'll bring you back before the Court if you want to ask for a preliminary [hearing] if you had time, you'd certainly be free to do that." Defendant has presented us no persuasive authority that—at this early stage—a trial court cannot temporarily defer its *Miller* inquiry and employ appointed counsel to both help clarify a defendant's equivocal request and to ensure that any eventual unequivocal request is knowing, intelligent, and voluntary. Accordingly, we conclude that the trial court's deferral of its consideration of defendant's equivocal request for self-representation for a minimal period of time did not amount to a denial of defendant's rights to self-representation under either Article I, section 11, or the Sixth or Fourteenth Amendments.

Affirmed.