Argued and submitted September 9, 2020, affirmed October 27, 2021, petition for review denied January 20, 2022 (369 Or 209)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSHUA FITZGERALD,
*Defendant-Appellant.*

### Harney County Circuit Court
18CR43328; A170301

500 P3d 721

Defendant appeals a judgment of conviction by a jury for second-degree burglary, ORS 164.215, and unauthorized use of a vehicle, ORS 164.135. The jury was not polled, so it is not known whether the verdicts were unanimous. On appeal, defendant contends that the trial court (1) erred by denying his motion for judgment of acquittal on the second-degree burglary count because, he argues, the facts do not satisfy the essential elements of the crime beyond a reasonable doubt; (2) erred by not ruling on what defendant characterizes as a "request to fire his attorney"; and (3) plainly erred by instructing the jury that it could convict him by nonunanimous verdicts. *Held*: The court did not err in denying defendant's motion for judgment of acquittal. Under the circumstances of this case, defendant did not adequately preserve his contention that the trial court erred in not ruling on defendant's request to fire his attorney. While the jury instruction did constitute plain error, the Court of Appeals declined to exercise its discretion to correct that error because the jury was not polled and, therefore, it was unknown whether the error was prejudicial.

Affirmed.

W. D. Cramer, Jr., Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

James, J., concurring.

**LAGESEN, P. J.**

Defendant appeals a judgment of conviction by a jury for second-degree burglary, ORS 164.215, and unauthorized use of a vehicle (UUV), ORS 164.135. The jury was not polled, so it is not known whether the verdicts were unanimous. On appeal, defendant contends that the trial court (1) erred by denying his motion for judgment of acquittal on the second-degree burglary count; (2) erred by not ruling on what defendant characterizes as a "request to fire his attorney"; and (3) plainly erred by instructing the jury that it could convict him by nonunanimous verdicts. We affirm.

*Motion for judgment of acquittal.* Defendant was convicted of second-degree burglary for his part in stealing two bags of recyclable cans from a Conex box behind a Safeway in Burns. At the time of the crime, the Conex box had been behind the Safeway for about two-and-a-half years and had not been moved since it was placed. It was not affixed to a foundation but was entirely enclosed on all six sides and had a lockable door:



Safeway uses the box as a storeroom to store recyclable cans and bottles returned to the store for the refund of the deposit. It does so to maintain sanitary conditions in its back storeroom, where food was stored. The store manager explained that the box is an extension of the back storeroom and that, without the box, the recyclables would be stored in the back storeroom. The box is kept locked and the only people with authorized access are Safeway employees.

The state's theory at trial was that the Conex box qualified as a "building" for purposes of the second-degree burglary statute, ORS 164.215, which requires proof that the defendant unlawfully entered or remained in a "building" with the intent to commit a crime. ORS 164.215(1). Defendant moved for judgment of acquittal on the ground that there is insufficient evidence to allow a finding that the Conex box is a "building," and the trial court denied the motion. On appeal, he assigns error to that denial. Our review is to determine "whether any rational trier of fact, drawing all reasonable inferences in the state's favor, could have found the essential elements of the crime beyond a reasonable doubt." *State v. Sjogren*, 313 Or App 364, 365, 494 P3d 1040 (2021). That means, for purposes of this case, the question is whether any rational trier of fact could have found beyond a reasonable doubt that the Conex box is a "building" as the legislature has defined that term for the burglary statutes.

ORS 164.205(1) supplies that definition: "'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodations of persons or for carrying on business therein." Accordingly, the question is whether a reasonable factfinder could find that the Conex box is a building under that word's ordinary definition, or, alternatively, could find that the Conex box, which unquestionably is a "structure," was "adapted *** for carrying on business therein." Defendant argues that a reasonable factfinder could make neither finding; the state argues that a reasonable factfinder could find that the Conex box satisfied both definitions of building.

We agree that a reasonable factfinder could, at a minimum, find that the Conex box falls within the ordinary definition of "building." "Building," pertinently, means:

> "**1:** a thing built: **a:** a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy **b:** a portion of a house occupied as a separate dwelling: APARTMENT, TENEMENT—used only in some legal statutes ***."

*Webster's Third New Int'l Dictionary* 292 (unabridged ed 2002). Here, based on the facts recited above about the long-term placement and use of the Conex box, a reasonable factfinder could find that the Conex box was "designed to stand more or less permanently," was "more or less completely enclosed by walls," and was "serving as a *** storehouse," and, therefore, was a "building" for purpose of ORS 164.205(1). The court did not err in denying defendant's motion for judgment of acquittal.

*Request to fire attorney.* Defendant was arraigned and appointed counsel. Two weeks later, defendant was arraigned on additional charges and his release was revoked. As recounted in more detail in our recent opinion in *State v. Fitzgerald*, 314 Or App 215, 498 P3d 328 (2021), defendant became upset about not being released. In the course of an exchange with the trial court that became increasingly heated, defendant stated, "I want to fire my attorney, too." The trial court instructed defendant that he "need[ed] to calm down, okay?" Defendant responded, "No, I don't need to calm down. I want to fire my attorney, please." The court then held defendant in contempt of court for his conduct: "Okay, [defendant], I'm going to find you in contempt of court. I'm going to order that you serve an executed sentence. You need to stop this, [defendant]." Later in the day, the court entered a written judgment on the contempt, stating: "Description of event that occurred in the immediate view and presence of the court: Uncalled outburst that

disturbed the orderly conduct of the proceedings." It did not treat defendant's statement that he wanted to fire his attorney as either a request for new counsel or a request to proceed *pro se* and did not inquire into it at the release hearing.

Defendant did not raise the issue of wanting to fire his attorney again before trial. Appointed counsel represented him through a first trial, which ended in mistrial, and then a second trial, which led to the convictions on review. Only after the jury returned its verdict did defendant raise the issue again. His lawyer asked the court to continue sentencing because defendant had appealed the contempt finding and also intended to challenge his convictions on appeal on the ground that the trial court had failed to rule on (what defendant characterized as) his request to fire his attorney. The lawyer wanted to determine whether he could continue to represent defendant under those circumstances. Ultimately, he concluded that he could, and defendant confirmed that he wanted this lawyer to represent him at sentencing, which he did.

On appeal, defendant asserts that "[t]he trial court erred when it failed to rule on defendant's request to fire his attorney" at the release hearing. Defendant contends that the trial court should have understood that request to be either a request to proceed *pro se* or a request for substitute counsel, each of which required the court to conduct an inquiry on the record into defendant's request.

The state responds, among other things, that defendant's contention is not preserved. The state asserts that, in context, defendant's assertions about wanting to fire his attorney at the release hearing did not alert the trial court that defendant was making a genuine request for substitute counsel or to proceed *pro se*. The state further contends that defendant did not preserve the issue by bringing it up before sentencing because, at that point, the focus was on whether counsel could continue to represent defendant at sentencing, given defendant's intention to raise the issue from the release hearing on appeal.

We agree with the state that defendant's post-trial, presentencing discussion of the issue did not preserve the issue for the reasons identified by the state. We also agree

with the state that defendant's contentions are not preserved by his statements at the release hearing, given the context in which those statements initially occurred and defendant's subsequent conduct. As we explained in *Fitzgerald*, 314 Or App at 221, our decision upholding the contempt judgment, at the time defendant made the statements about firing his attorney, defendant was engaged in "'an uncalled outburst that disrupted the orderly conduct of the proceedings.'" (Quoting the trial court's ruling.) Given that context—a disruptive outburst sufficient to justify a finding of contempt at the release hearing—the trial court could have understandably believed that defendant was not genuinely requesting to proceed *pro se* or with substitute counsel but was merely upset at the result of the hearing. *See State v. Vanornum*, 354 Or 614, 632, 317 P3d 889 (2013) (requirement of preservation is prudential and pragmatic in nature and "ensure[s] that trial courts have an opportunity to understand and correct their own possible errors and that the parties are not taken by surprise, misled, or denied opportunities to meet an argument" (internal quotation marks and citation omitted)).

Then, rather than clarifying or reiterating any genuine request to fire his attorney and asking the trial court to rule on such a request at any point before trial, defendant instead proceeded through two trials with his appointed lawyer without expressing any dissatisfaction. Under the totality of these circumstances, defendant's isolated statement about firing his attorney in the midst of an "'uncalled outburst that disturbed the orderly conduct of the proceedings'" in a way sufficient to warrant a finding of contempt did not give the court a fair opportunity to see that he genuinely was seeking a new attorney or no attorney, and not just expressing his frustration at the result of the release hearing.[1] Said another way, when a party requests a ruling

---

[1] The concurring opinion views defendant's statement about firing his attorney as an invocation of his right to self-representation, and its analysis turns on that view. 315 Or App at 343 (James, J., concurring). But it is worth noting that defendant's statement about wanting to fire his attorney appears to have been just that—the expression of the desire to fire his attorney at that point in time, and not the expression of the desire to proceed without any lawyer at all. Defendant's own statements at his post-trial hearing tend to confirm that he, at the time, wanted a different lawyer, not to proceed with no lawyer. At that point, defendant stated: "Your Honor, when I made the comment in video court, I absolutely wanted a different lawyer."

from a trial court in the midst of a disruptive outburst severe enough to lead to a finding of contempt that is upheld on appeal, to preserve an issue about the request for appeal, the party ordinarily must repeat the request in a manner that comports with the orderly conduct of courtroom proceedings so that the trial court has a fair opportunity to address the request.

*Nonunanimous jury instruction*. In his third assignment of error, defendant asserts that the trial court plainly erred in instructing the jury that it could return nonunanimous verdicts. Although defendant is correct that the trial court plainly erred, consistent with *State v. Dilallo*, 367 Or 340, 342, 478 P3d 509 (2020), we decline to exercise our discretion to correct that plain error because the jury was not polled.

Affirmed.

**JAMES, J.,** concurring.

On defendant's first and third assignments of error concerning the denial of the motion for judgment of acquittal and the claim of plain error in instructing the jury, I join the majority fully. On defendant's second assignment of error, however, involving defendant's invocation of his right to self-representation, I cannot join the reasoning of the majority, and so write separately.

The right to counsel includes the right to self-representation under both the state and federal constitutions. *State v. Miller*, 254 Or App 514, 523, 295 P3d 158 (2013); *State v. Verna*, 9 Or App 620, 624, 498 P2d 793 (1972) ("A defendant in a criminal case has the constitutional right not only to be represented by counsel, but also, if he so elects, to represent himself."); *Faretta v. California*, 422 US 806, 819, 95 S Ct 2525, 45 L Ed 2d 562 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.").

When faced with a question of self-representation, first we ask if a defendant invoked the right at all. If he did, his invocation can be equivocal, or unequivocal. If it is unequivocal, we have said that a court must determine, on

the record, whether his decision is an intelligent and understanding one, and whether granting the defendant's request would disrupt the judicial process—what we have colloquially termed a *Miller* inquiry. *State v. Davis*, 110 Or App 358, 360, 822 P2d 736 (1991); *Verna*, 9 Or App at 627.

We have found reversible error when a trial court failed to immediately engage in a *Miller* inquiry in the face of an unequivocal invocation of the right to self-representation. In *State v. Ortega*, 286 Or App 673, 674, 399 P3d 470 (2017), we held:

> "Specifically, the record of the operative pretrial hearing discloses that, notwithstanding defendant's initial, unambiguous request ('I don't want the services of the lawyer. I want to represent myself.') and his ultimate, and equally explicit, reiterated request ('I am waiving the services of my lawyer.'), the trial court failed to engage in the inquiry prescribed for the assessment of such requests."

If defendant's invocation of self-representation is instead equivocal, we have still required the trial court to engage in the *Miller* inquiry; however, we have left open the door for the trial court to postpone that inquiry to a future hearing.

> "[Here] defendant made an equivocal invocation at his first appearance. The first appearance on a criminal matter often occurs quickly, and *en masse* with many other cases. Often, a criminal defendant who has been appointed counsel will have met his or her lawyer mere moments before. In many instances the lawyer actually appointed isn't even present. As a practical matter, first appearances are an imperfect forum to thoughtfully communicate the intricacies of the costs and benefits of representation by counsel.

> "In this case, there was no trial imminent, nor even any significant preliminary dispositive hearing upcoming. The record shows that the court set a hearing a few days out and explicitly noted 'at that time we'll bring you back before the Court if you want to ask for a preliminary [hearing] if you had time, you'd certainly be free to do that.' Defendant has presented us no persuasive authority that—at this early stage—a trial court cannot temporarily defer its *Miller* inquiry and employ appointed counsel to both help clarify a defendant's equivocal request and to

ensure that any eventual unequivocal request is knowing, intelligent, and voluntary."

*State v. Brooks*, 301 Or App 419, 428-29, 456 P3d 665 (2019), *vac'd and rem'd on other grounds*, 368 Or 168, 486 P3d 794 (2021).

In this case, at a hearing on the record, in open court, defendant said to the trial court "I want to fire my attorney, too." Indisputably, that hearing had grown contentious. But, when prompted by the court to "calm down," defendant reiterated, in no uncertain terms, his desire for self-representation, saying, "No, I don't need to calm down. I want to fire my attorney, please." Despite that clear and unequivocal invocation of the right to self-representation, the majority concludes that it essentially didn't occur, reasoning:

> "[D]efendant's contentions are not preserved by his statements at the release hearing, given the context in which those statements initially occurred and defendant's subsequent conduct. *** Given that context—a disruptive outburst sufficient to justify a finding of contempt at the release hearing—the trial court could have understandably believed that defendant was not genuinely requesting to proceed *pro se* or with substitute counsel but was merely upset at the result of the hearing."

315 Or App at 342. As I understand the majority, it is saying that the disruptions occurring during the hearing render defendant's statement "I want to fire my attorney" not merely equivocal in nature, but *not an invocation of a right at all*. Respectfully, I cannot agree.

The invocation of a constitutional right can occur in a wide variety of contexts, from the street, to the police stationhouse, to the courtroom; and rarely does it occur in the parlance of lawyers. Rights are often grasped for in moments of crisis, where emotions run high and tempers are frayed. "Get off my land!" is just as likely as "I do not consent to a search." "I'm not [expletive] talking to you!" is heard as often as "I invoke my right to be silent." And screaming "I want my lawyer!" might occur more frequently than calmly stating it. The bellicose, the loud, the belligerent, and the difficult all shelter under the wings of our state

and federal constitutions; rights are not reserved only for those who invoke them politely. That does not change, even in the courtroom.

Unquestionably, decorum is important. Some courts have even equated common law rules of decorum, and judicial discretion in this regard, to the heights of the constitution. *See, e.g.*, *State v. Clifford*, 162 Ohio St 370, 373, 123 NE2d 8 (1954) ("The right to trial in a courtroom, conducted and maintained in an atmosphere that bespeaks the profound and dignified responsibilities with which those who are conducting its proceedings—dealing with human rights as they must—are charged, is basic. A court in enforcing reasonable courtroom decorum is preserving the constitutional and unalienable right of a litigant to a fair trial[.]"). But decorum cannot stand *above* the constitution.

As I read this record, there is no plausible argument that defendant did not clearly, and unambiguously, invoke his right to self-representation not once, but twice, to the trial court: "I want to fire my attorney," then, "No, I don't need to calm down. I want to fire my attorney, please." I find no support for the majority's conclusion that the invocation of a constitutional right, occurring in the context of "a disruptive outburst," is no invocation at all, or that an invocation made while angry is "unpreserved" for judicial review, or permits an inquiry as to whether such an invocation was "genuin[e]." 315 Or App at 342. That does not change even when, as is the case here, a defendant's conduct rises to the level of sanction by summary contempt. Summary contempt is a subjective, discretionary, choice by the trial judge. *Pearson and Pearson*, 136 Or App 20, 25, 900 P2d 533 (1995) (reviewing summary contempt for abuse of discretion); *Com. v. Wiencis*, 48 Mass App Ct 688, 691-92, 724 NE2d 736 (2000) ("When, as here, the flagrant conduct occurred in the presence of the judge and jury, discretion to use summary contempt procedures to maintain order rests squarely with the judge."). Discretion is a choice between two or more legally permissible outcomes. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). What may be sanctionable as contempt to one judge, may not be to another. Whether the invocation of a constitutional right is to be recognized cannot turn on the idiosyncrasies of the trial judge.

In this case, we might rightly ask whether the trial court could delay the *Miller* inquiry to a later hearing, or whether defendant's failure to raise the issue at the next scheduled hearing amounted to a withdrawal or a waiver of his request to fire his lawyer. That reasoning is what that underlies my concurrence in the judgment in this case. Under the unique circumstances present here, I would conclude that the court was not required to rule on the request at that precise moment, and that defendant thereafter waived his right to object to the court's failure to rule on his request to fire his lawyer by litigating the case as though that request never happened—including proceeding to a first trial, which resulted in a mistrial, and then proceeding through verdict with the same counsel in a second trial, and then only mentioning the court's failure to rule on his earlier request once he got to the sentencing phase after being found guilty in that second trial. But, unlike the majority, I cannot conclude that defendant's outburst renders his clear invocation of the constitution a nullity.

I respectfully concur.